| | |
|---|---|
| ANTHONY JONES, Petitioner, | No. 2:14-cv-00486- JAM GGH |
| v. | |
| WARDEN, KERN VALLEY STATE PRISON, Respondent. | FINDINGS AND RECOMMENDATIONS |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

*Introduction and Summary*

This case returns from the state courts after it had been remanded for full exhaustion of petitioner's competency to stand trial claim, Claim 3. After a complete discussion of the case history and the merits, the undersigned recommends that Claim 3 be denied.

*Case History*

After a request to extend time to file a petition was denied, the petition was filed April 14, 2017. ECF No. 8. After a First Amended Petition was filed, hereafter "the Petition," the court dispensed with any request for a stay to further exhaust as moot, and ordered a filing of missing pages. On January 15, 2015, respondent was ordered to answer and the undersigned recommend that Claim 4 be dismissed. ECF No. 17. That recommendation was adopted. ECF No. 20. Respondent filed an Answer, ECF No. 27, and filed, inter alia, an exhibit showing the exhaustion

by petitioner of his state habeas petition, ECF No. 25. This exhaustion is referenced herein as the "interim" exhaustion, and the state supreme court's decision is discussed further *infra*. Petitioner filed his Traverse. The undersigned asked for further briefing on the competency to proceed claim. Further briefing was received from respondent, and the matter was taken under submission.

Findings and Recommendation on the case were filed on March 23, 2016. ECF No. 44. The undersigned recommended that Claims 1 and 2 be denied. The undersigned further found that Claim 3 needed further exhaustion. Key to the undersigned's decision was the fact that apparently for the first time, petitioner had filed a document with this court clearly showing that the trial judge, ex parte, had ordered a mental examination for petitioner. This was important because this document demonstrated the incorrectness of the primary factual premise of the Court of Appeal on the competency issue when it denied the appeal—that the trial judge had never ordered a competency examination. The undersigned was concerned that this ex parte procedure could be seen as showing the trial judge's "doubt" about petitioner's competency; yet no competency hearing process was undertaken. Because the Court of Appeal had clearly not been aware of this document, the undersigned, citing Gonzalez v. Wong, 667 F.3d 965, 979 (9th Cir. 2011), recommended that petitioner be required to undertake exhaustion once again because the state courts had not been shown the critical evidence when making their decisions. The full discussion appears in ECF No. 44.

After receiving somewhat strident objections by Respondent, the District Judge adopted the Recommendation, in its entirety, stayed entry of judgment on Claims 1 and 2, and ordered the remand to the state court for further exhaustion. ECF No. 47.

Petitioner first went to Superior Court on remand. This series of petitions commencing with the Superior Court is referenced as the "post-remand" petition. This decision is discussed extensively *infra*, but suffice to say here that the petition was denied on the procedural grounds that the claim had been raised before and denied by the California Supreme Court (the interim habeas), and in any event no prima facie case for relief was made out on the merits. This decision appears at several locations in the docket, but the undersigned will use ECF 49, electronic

pagination at 19-23. The Court of Appeal denied the following petition "on the merits," ECF No. 50 at electronic page 23. The California Supreme Court issued a further denial on procedural grounds citing three cases, including In re Robbins, 18 Cal. 4th 770, 780 (1988) ECF No. 51. The petition and decision of the state supreme court is part of the "post-remand petition," and again, is discussed *infra*.

Supplemental briefing was received from the parties, and this Findings and Recommendations followed.

*Discussion*

1. Exhaustion

The Superior Court first found that this court may have been "unaware" that petitioner had previously presented his competency claim to the state courts, referring to the state habeas petition filed while this federal case was pending, referenced here as the "interim" petition. This was not the case as the Findings and Recommendation referred to the Court of Appeal's discussion of the claim and made findings thereon. This appellate decision was denied review in the state supreme court. In addition, the docket in this case clearly reflected that petitioner had proceeded in state habeas corpus during the pendency of the federal proceedings to exhaust this claim. The three case citations by the state supreme court simply muddied the exhaustion waters, and were not discussed by respondent in the Answer or supplemental briefing, or this court in the Findings and Recommendations.

The interim state habeas petition was denied citing People v Duvall, 9 Cal 4th 464, 474 (1995); In re Waltreus, 62 Cal. 2d 218, 225 (1965); In re Swain, 34 Cal. 2d 300, 304 (1949). ECF No. 25. Duvall and Swain at the page citations given indicate that the allegations are so insufficient that the merits of the claims cannot be reached. The citations generally, but not always, indicate that the claims remain non-exhausted for federal exhaustion purposes. See Wilson v. Hedgpeth, 2012 WL 6201358 (N.D. Cal. 2012), discussing Kim v. Villalobos, 799 F.2d 1317 (9th Cir. 1986). The Waltreus citation, indicating that one cannot raise in habeas what has already been raised on direct review is neither a procedural bar nor a ruling on the merits. Forrest v. Vasquez, 75 F.3d 562, 564 (9th Cir. 1996). A Waltreus citation requires the federal

3

court to "look through" the state supreme court citation to the last reasoned decision, id, here the Court of Appeal decision on direct review. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Johnson v. Williams, 568 U.S. 289 (n.1) (2013).[1]

Thus, the undersigned was faced with a directive from the state supreme court that petitioner had *not* exhausted his incompetency claim in habeas, but also that this court was to refer to the Court of Appeal decision. The "look-through" doctrine would focus the decision in this court on the last explained decision, i.e., that of the Court of Appeal.

Moreover, under Supreme Court and Ninth Circuit precedent, simply "presenting" a claim to the state courts does not necessarily "exhaust" a claim for federal habeas corpus purposes. A habeas claim presented in state court, and ultimately to the state's highest court must be presented in such a way that the state courts have a "fair opportunity" to rule on the merits of a claim, Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.1986). A fair presentation includes a showing of the important or critical facts necessary to support the claim. If the critical facts are first presented in federal court without the opportunity of the state courts to review them, the claim is *not* exhausted. Aiken v. Spaulding, 841 F.2d 881, 884(n.3) (9th Cir.1988); see also Gonzales v. Wong, 667 F.3d 965, 979 (9th Cir. 2011) cited in the initial Findings and Recommendations.

As found by the Superior Court, the critical reports demonstrating that the trial judge had ordered the mental examination were apparently not presented to the California Supreme Court on the interim habeas, albeit they were referenced in that interim state petition. There is no record of the state supreme court requesting that the documentation be filed.

This was the point of remand to the state courts—the critical facts concerning the trial judge's order for a mental examination, i.e., the actual documentation, were unavailable to the Court of Appeal and California Supreme Court when the claim was presented either on direct review, or in the interim habeas. As stated above, the Superior Court found this fact on remand.

---

[1] The parameters, or even the continued vitality of the "look through" doctrine, is presently before the Supreme Court, Wilson v. Sellers, (U.S. Supreme Court 16-6855, argued 10/30/2017). The undersigned is (and was), of course, bound by the holdings of the Supreme Court, not what the Supreme Court might do in the future.

As recounted in the Findings and Recommendations, the appellate court had made the finding that there was no evidence to show that the trial judge had ordered the mental examination. As found previously, the dispositive evidence unequivocally demonstrating that the trial judge had ordered the mental examination ex parte, and received its results ex parte, was first presented in federal habeas.

The undersigned noted, however, that the state courts could make a factual finding about petitioner's diligence, i.e., why the critical documentation was not in the record or otherwise supplemented into the record. It was necessary to understand when petitioner came in possession of the critical evidence because exhaustion requires a diligent presentation of the operative facts to the state courts. In re Robbins, supra. Unfortunately, no such factual finding was attempted in any state court on remand. Neither the Superior Court nor the state supreme court made an explained finding regarding diligence.

The above was critical evidence to the undersigned because the probable inference to be drawn from a trial judge ordering a mental examination was the inference that the trial judge maintained some type of doubt about petitioner's competence. The undersigned found it unreasonable to believe that the criminal courts ordered mental examinations for no reason, or that there was some procedure in those courts where uncalled for mental examinations were ordered on a roving, lottery basis.

Nevertheless, the court finds the issue here exhausted at this point, as further exhaustion would be futile, and respondent does not assert otherwise. All documentation was presented to the state supreme court in the post-remand habeas. Therefore, the first issue to be decided here is whether the unadorned citation of In re Robbins, 18 Cal. 4th 770, 780 (1998), by the state supreme court in the post-remand state habeas constitutes a sufficient finding of untimeliness. Reaching the merits in the alternative, the second issue is whether it is AEDPA reasonable to find that the trial judge did not maintain a significant doubt about petitioner's competence when he ordered the ex parte mental examination, without petitioner or the prosecution participating in any process regarding competency.

////

2. <u>Untimeliness</u>

As set forth above, none of the state courts made any specific factual finding, after review of evidence in some type of fact-finding procedure, that petitioner possessed on direct review the court documents which demonstrated that the trial judge had ordered the competency examination. The only decision on timeliness was the unadorned citation by the California Supreme Court of <u>In re Robbins</u>, 18 Cal. 4th 770, 780 (1998).[2] However, this case at page 780 set forth the obligations of petitioner if he were to file a petition that was substantially delayed:

> 2(a) Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. A petitioner must allege, with specificity, facts showing when information offered in support of the claim was obtained, and that the information neither was known, nor reasonably should have been known, at any earlier time. It is not sufficient simply to allege in general terms that the claim recently was discovered, to assert that second or successive postconviction counsel could not reasonably have discovered the information earlier, or to produce a declaration from present or former counsel to that general effect. A petitioner bears the burden of establishing, through his or her specific allegations, which may be supported by any relevant exhibits, the absence of substantial delay.
>
> (3) A claim or a part thereof that is substantially delayed nevertheless will be considered on the merits if the petitioner can demonstrate good cause for the delay. Good cause for substantial delay may be established if, for example, the petitioner can demonstrate that because he or she was conducting an ongoing investigation into at least one potentially meritorious claim, the petitioner delayed presentation of one or more other known claims in order to avoid the piecemeal presentation of claims, but good cause is not established by prior counsel's asserted uncertainty about his or her duty to conduct a habeas corpus investigation and to file an appropriate habeas corpus petition.
>
> (4) A claim that is substantially delayed without good cause, and hence is untimely, nevertheless will be entertained on the merits if the petitioner demonstrates (i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted…..

---

[2] The status of <u>Robbins</u> as an independent and adequate procedural bar was upheld in <u>Walker v. Martin</u>, 562 U.S. 307 (2011).

Petitioner goes no distance in establishing on the latest exhaustion process that he made specific allegations to the state supreme court as to why he was filing a second petition long after one would have been considered untimely. That is, petitioner was placed on notice by this court that his diligence in obtaining the documentation, *and presenting it to the state courts*, was an issue to be resolved on filing the post-remand petition. ECF NO. 44 (Findings and Recommendations at 25, n.13.) Yet there is no evidence presented whatsoever that petitioner even tried to explain to the state courts why the critical documentation clearly showing the errant factual basis of the Court of Appeal on direct review was presented for the first time in mid-proceedings in federal court. The undersigned can speculate why that might have been the case, but speculation will not be a substitute for petitioner's explanation.

Reasonable jurists would not find the untimeliness finding of the California Supreme Court AEDPA unreasonable. Claim 3 should be denied on this ground.

3. The Merits

Assuming that the matter of petitioner's competence was timely presented, i.e., the critical documentation was timely presented or there is an excuse for not doing so, the claim fails on its merits.

There is no doubt that the competency procedures set forth in Cal. Penal Code section 1368, et seq. comport with due process. See People v. Pennington, 66 Cal. 2d 508, 516(1966) revising section 1368's procedures in light of Pate v. Robinson, 383 U.S. 375 (1966); Medina v. California, 505 U.S. 1244 (1992). The issue here, is whether those procedures should have been commenced. A metaphysical way of putting the issue is when is a doubt, a doubt, for purposes of requiring a competency hearing.

Without deciding the issue, and giving the state courts the opportunity to rule on the issue, the previous Findings and Recommendations focused on the concededly erroneous factual determination of the Court of Appeal-- that the trial judge had not ordered the mental examination. The undersigned reasoned that if such an examination were ordered, such could be good evidence of the trial judge's state of mind regarding a "doubt" about petitioner's competence to proceed. There was also some evidence that petitioner had difficulties in court and

in his jail housing.  On the other hand, there was also evidence of petitioner's competence, as well, given the trial judge's pronouncement six months before trial that petitioner had an abundance of competence to proceed to trial and represent himself.  Clearly, by ordering the examination, the trial judge had some type of "doubt" regarding petitioner's competence to proceed in trial, and represent himself during that trial.

The Ninth Circuit has clearly explained Supreme Court authority on the issue here:[3]

> To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171, 95 S. Ct. 896. Where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing. *Pate*, 383 U.S. at 385, 86 S. Ct. 836. This responsibility continues throughout trial, Drope, 420 U.S. at 181, 95 S. Ct. 896, and we apply the same bona fide doubt standard to determine whether an additional competency hearing was required. *See Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir.1997). We have explained that under *Drope* and *Pate*, the test for such a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir.1976) (en banc). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required," and "one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180, 95 S. Ct. 896 (paraphrasing Pate, 383 U.S. at 385, 86 S. Ct. 836).

Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010)

The de Kaplany court spoke directly to the issue of the necessary significance of a competency doubt:

> "Under the rule of *Pate v. Robinson* (1966) 383 U.S. 375, 86 S. Ct. 836, 15 L.Ed.2d 815, a due process evidentiary hearing is constitutionally compelled at any time that there is 'substantial evidence' that the defendant may be mentally incompetent to stand trial. 'Substantial evidence' is a term of art. 'Evidence' encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in

---

[3] In the AEDPA context, citation to circuit authority is risky business.  See the most recent *per curiam* reversal: Kernan v. Cuero, __U.S.__, 2017 WL 5076049, Docket No.16-1468 (Nov. 7, 2017).  However, the undersigned believes the Ninth Circuit cases discussed fairly explicate Supreme Court holdings, or are otherwise persuasive to the discussion here.

8

> the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying *Pate's* substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? It (sic) sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court sua sponte must order an evidentiary hearing on the competency issue. It is only after the evidentiary hearing, applying the usual rules appropriate to trial, that the court decides the issue of competency of the defendant to stand trial." *Id.* at 666.

de Kaplany v. Enemoto, 540 F.2d 975, 980-981 (9th Cir. 1976 (en banc).

The de Kaplany court at 981-983 (footnotes omitted) (emphasis added) continued and directly answered the question here, i.e., the level of doubt which must exist before a competency hearing must be held:

> Before applying these authorities to de Kaplany's petition one additional case of this circuit should be mentioned. It is *Laudermilk v. California Department of Corrections*, 439 F.2d 1278 (9th Cir. 1971)….
>
> ****
>
> *Laudermilk* appealed his conviction on the ground that an evidentiary hearing on competence should have been conducted. He relied particularly on *People v. Pennington*, 66 Cal.2d 508, 58 Cal. Rptr. 374, 426 P.2d 942 (1967), in which the Supreme Court of California said:
>
> "*Pate v. Robinson* stands for the proposition that an accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense. Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence testimony of prosecution witnesses or the court's own observations of the accused may be to the contrary. . . . (W)hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a section 1368 hearing as a matter of right under *Pate v. Robinson* . . . .*" Id. at 381, 426 P.2d at 949.
>
> *Laudermilk's* reliance was premised on the contention that *Pennington* required that only evidence indicating incompetence of the accused to stand trial be marshaled to determine whether it amounted to substantial evidence of incompetency. As *Laudermilk* read *Pennington*, if such evidence was substantial a hearing was

9

required no matter how compelling was evidence to the contrary. Despite the fact that the author of *Pennington*, Justice Peters, also interpreted it in this fashion,7 the majority of the Supreme Court of California, after examining all the pertinent evidence before the trial court, held that Laudermilk "did not produce substantial evidence of present mental incompetence so that it could be said that a doubt as to (Laudermilk's) present sanity was raised in the mind of the trial judge and the latter was compelled to order that the question as to defendant's sanity be determined by a trial." 61 Cal. Rptr. at 653, 431 P.2d at 237.

Moreover, the Supreme Court of California indicated that under *Pate* and *Pennington* "more is required to raise a doubt than mere bizarre actions (citations omitted) or bizarre statements (citations omitted) or statements of defense counsel that defendant is incapable of cooperating in his defense (citations omitted) or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense. (citations omitted)." *Id.* And finally it refused to fragment the report of a psychiatrist focusing only on those features indicating incompetence when on balance the psychiatrist had concluded Laudermilk was competent to stand trial. 61 Cal. Rptr. 655, 431 P.2d at 239.

As we did on appeal from the denial of Laudermilk's habeas petition, we once more approve these views of the Supreme Court of California. Nor do we regard *Moore* and *Tillery* as inconsistent with this approval. Two sentences in Moore, already set forth above at p. 981, have been advanced by de Kaplany's counsel in this proceeding to support the view that this circuit, in effect, has adopted the approach of Justice Peters. These two are:

"Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence."

We interpret these two sentences to mean nothing more than that once good faith doubt exists, or should exist, its resolution requires a hearing. *These sentences do not mean that doubt necessarily exists, and thus a hearing is required, because certain evidence exists which would create a doubt were it not for other evidence which precludes doubt. Genuine doubt, not a synthetic or constructive doubt, is the measuring rod.8 The emergence of genuine doubt in the mind of a trial judge necessarily is the consequence of his total experience and his evaluation of the testimony and events of the trial.*

Thus, the discussion here finally arrives at the issue of whether the ordering of the *ex parte* mental examination, by itself, or in conjunction with other evidence, required the holding of a competency hearing for petitioner.

////

10

The Superior Court, on remand from this court, cited People v. Ashley, 59 Cal. 2d 339, 363 (1963), for the proposition that under California law, a trial judge was permitted to ask for a mental examination to explore the depth of any doubt as to a defendant's competence to proceed to trial prior to ordering a competency hearing. Indeed, that is the state law, and has been extended to *require* such an examination if the trial judge has *any* doubt about whether the doubt rises to the level where a competency hearing is necessary. People v. Campbell, 193 Cal. App. 3d 1653, 1663 (1987). Without citation to the record, the Superior Court determined that no competency question of doubt had been discerned such that a competency hearing was necessary. It appears that the California Supreme Court adopted the decision of the Superior Court in petitioner's case with its post-remand citation of In re Miller, 17 Cal. 2d 734, 735 (1941) (no new facts had been presented which would cause a re-evaluation of a preceding decision)

The Supreme Court of the United States has not indicated any specific procedures which must be followed to develop a competency determination; rather it has expressly held that the state courts have broad discretion to fashion the procedures to be utilized. Medina, supra, at 445. While that discretion is not without bounds, Cooper v. Oklahoma 512 U.S. 348 (1996), in this AEDPA setting, the Supreme Court would have had to have held at some point that whenever a judge holds any doubt about competency, the judge may not resort to a pre-hearing expert opinion, but must, if he is to take any evidence at all, receive such evidence at a competency hearing itself. The undersigned is aware of no such holding. Thus, the mere asking an expert to review the mental health of a defendant does not *ipso facto* require the holding of a competency hearing.

Accordingly, although the precise directive of the trial judge in petitioner's case was somewhat bizarre--conduct an examination to see whether the defendant needed to be committed to a hospital on account of the potential for harm to himself or others--as opposed to a request that the defendant be evaluated to see if he understood the proceedings and could assist himself in those proceedings in which he represented himself,-- the judge was entitled to use the "clearance" of the jail experts to assess the level of doubt, if any, he held as to competency. No competency hearing was held.

As indicated in the previous Findings and Recommendations, the undersigned has reviewed the record. The penultimate issue is whether the finding of insufficient doubt to hold a competency hearing was AEDPA unreasonable. The undersigned cannot find that it was. First, there is no competent evidence that petitioner was unable to understand the proceedings against him. On the contrary, petitioner conducted himself in such a manner that he clearly understood what was happening in court, as well as the nature of the proceedings. There is no evidence that he did not ultimately understand the charges against him even if he had occasional questions.

With respect to the issue of petitioner's ability to assist himself in his self-representation, petitioner was, without a doubt, difficult to manage. As indicated previously, petitioner could be surly, defiant and the like. To any trial judge, occasional outbursts by pro se litigants are not unusual and are part of the process. In any event, the patient trial judge worked petitioner through these difficulties, and petitioner was again able to refocus on the case. The undersigned has considered whether petitioner was so consumed with anger or insubordination due to mental health issues, i.e., that he was simply unable to stay on task throughout trial. The record does not reflect such in a substantial manner. Moreover, given that few pro se defendants will do an exemplary job of questioning and presenting evidence, petitioner appeared to have an adequate ability to pose questions, i.e., for the most part they were understandable and related to the case issues.

See also the citations to the record by Respondent in the Answer, ECF No. 27 at 14, and especially the "Response" (supplemental brief before remand), ECF No. 37 at 4-7.

Despite petitioner's protests to the contrary, the trial judge in pretrial proceedings had previously found petitioner to be competent beyond any doubt, and his defense counsel at the time stated to the trial judge that he was not raising any issue of competency at that time. Although not dispositive given the time between that finding and end of trial, this determination is entitled to consideration.

Finally, aside from the pre-trial assertion of incompetency, petitioner did not himself indicate to the judge *during trial* that he did not understand the proceedings or that he was unable to assist in his defense, or engage in self-representation. Indeed, petitioner was surprised that any

12

mental health examination had been ordered for him, and he expressed this surprise to the examining physician.  Even at this juncture, petitioner does not argue specific examples of incompetence, but solely relies on his belief that the judge had expressed a doubt by the ordering of an examination, and therefore a competency hearing was mandated.  ECF Nos .53, 55 .  Nor had petitioner argued his actual incompetency before the remand.   ECF 33 (Traverse) at 2: [by petitioner] *"Respondent is correct.  Petitioner did not claim he was incompetent at trial, however, trial court entertained a doubt as to Petitioner's competence."*; ECF 15  (Amended Petition) at 20 (electronic pagination) (emphasis added)

In sum, although some jurists might have held a formal competency hearing, the undersigned cannot find that all reasonable jurists would have had sufficient doubt based upon *substantial* evidence such that a competency hearing should have been held.

Accordingly, if reviewed on the merits, Claim 3 should be denied.

*Conclusion*

Claim 3 should be denied.  Judgment should now be entered for Respondent on all claims.  A Certificate of Appealability  (COA) should be issued for Claim 3.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 15, 2017.

    /s/ Gregory G. Hollows
    GREGORY G. HOLLOWS
    UNITED STATES MAGISTRATE JUDGE